UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
HARDEEP SINGH and BALDEV SINGH,

                 Plaintiffs,                **REPORT AND RECOMMENDATION**
                                               **19 CV 4687 (PKC)(LB)**

    -against-

GOLAM MOWLA
    d/b/a G. Mowla Master Craftsmen,

                 Defendant.
------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

    Plaintiffs Hardeep Singh and Baldev Singh[1] bring this civil action against Defendant

Golam Mowla d/b/a/ G. Mowla Master Craftsmen to recover damages for violations of their

rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq., and the New York

Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 et. seq. and 650 et. seq., including failure to pay

minimum wages, overtime wages, and spread of hours pay, and to provide required wage

statements and notices. First Am. Comp. ("FAC") ¶¶ 14, ECF No. 52. On August 25, 2021,

Plaintiffs amended their complaint. ECF No. 52. Despite service of the amended summons and

complaint on the defendant, ECF No. 55, defendant has failed to plead or otherwise defend this

action. See Cert. of Default, ECF No. 57. Now before the Court is plaintiffs' second motion for a

default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. See ECF No.

59. Plaintiffs also move for an award of attorney's fees and costs. See ECF No 62. The

Honorable Pamela K. Chen referred plaintiffs' motions for a default judgment and an award of

fees and costs to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).

See ECF Order dated April 27, 2022.

---

[1] Although plaintiffs brought this case purportedly as a Collective Action under 29 U.S.C. ¶ 216(b) and as a Class
Action under Fed. R. Civ. P. 23(b), they seek a default judgment as individual plaintiffs.

For the reasons set forth below, I respectfully recommend that the Court should deny plaintiffs' motion for a default judgment with thirty days leave to file a second amended complaint. Plaintiffs have failed to sufficiently establish coverage under the FLSA. In light of this finding, I recommend that the Court should decline to exercise supplemental jurisdiction over plaintiffs' state-law claims. Even if plaintiffs had established that defendant is a covered employer under the FLSA and that they were his employees, their allegations are insufficient to establish the defendant's liability as a matter of law. The Court should likewise deny plaintiffs' motion for attorney's fees and costs without prejudice.

## BACKGROUND[2]

Plaintiffs Hardeep Singh ("Hardeep") and Baldev Singh ("Baldev") allege they were employed by defendant Golam Mowla d/b/a G. Mowla Master Craftsman[3] to perform construction work at projects sites in the New York City area during various periods from in or around April 2013 through April 2017. FAC ¶¶ 7, 9. On plaintiff Hardeep's first day of work, plaintiff alleges that defendant introduced himself as "Golam Mowla," told Hardeep that G. Mowla Master Craftsman was his company and gave him a business card. Id. ¶ 17; see also Defendant's Name Card, ECF No. 52-2. Plaintiffs allege that defendant "maintained employee records at Golam Mowla d/b/a G Mowla General Contractor" and that Mowla used his residential address as his place of business. Id. ¶¶ 11, 14–15.

---

[2] The facts are drawn from the allegations in plaintiffs' first amended complaint and documents incorporated by reference. The allegations in the complaint are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 108 (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

[3] In the amended complaint, plaintiffs identify the defendant as the individual Golam Mowla and refer to multiple entities interchangeably as defendant's alleged business: G. Mowla Master Craftsman, G Mowla General Contractor, G Mowla Home Improvement, Gola Mowla Construction Corp. See, e.g., FAC ¶¶ 11, 17, 32. Plaintiffs also appear to have served the amended complaint and summons upon Golam Mowla the individual, not as owner or operator of a business entity. See Aff. of Service, ECF No. 55. As will be discussed below, while it is unclear precisely who plaintiff alleges the named defendant is, the Court assumes that plaintiffs intended to name Golam Mowla as the sole, individual defendant in this case.

Before beginning a new project, defendant would allegedly share with plaintiffs the project's estimated costs and would not accept a project unless he could quote approximately $100,000[4] or more in costs and could reasonably expect profits to exceed the costs. Id. ¶¶ 21, 26–27. Defendant completed about six or seven new projects each year. Id. ¶ 28. Plaintiffs occasionally accompanied defendant on trips to Home Depot, where defendant purchased supplies "including paint, cement, stucco patch, stucco mix, [s]heetrock, compound cement, wood, and bricks." Id. ¶¶ 29–30.

Plaintiff Hardeep worked at a number of projects during his employment, including two in Jamaica, Queens. Id. ¶ 39. When he was hired in September 2013, defendant promised to pay him at a rate of $130 per day. Id. ¶ 61. Hardeep proceeded to work for defendant from September 6, 2013 through December 31, 2013. Id. ¶¶ 7, 45–57. He returned to work for defendant in 2016 at a promised rate of $150 per day. Id. ¶ 62. In 2016, he worked from August 1 to on or about September 16, 2016, then again from November 1, 2016 to November 15, 2016.[5] Id. ¶¶ 7, 58–60. In both 2013 and 2016, the number of hours that plaintiff Hardeep worked each week varied. Id. ¶¶ 45–60. His "regular" hours ran from 7:00 a.m. to 7:30 p.m. with a twenty-minute break each day. Id. ¶ 42. On days that he worked in excess of his "regular" hours, he worked until 8:00 p.m. or at times until 9:00 p.m. See, e.g., id. ¶¶ 46, 49. Plaintiff Hardeep kept contemporaneous records of the number of days and hours that he worked for defendant each week. Id. ¶ 40; see also Hardeep Singh's written work records (hereinafter "Hardeep work records"), ECF No. 60-6. Defendant failed to provide documents regarding the hours that plaintiff worked, his hourly rate,

---

[4] Defendant allegedly gave price quotes in "lakh," a number in the Indian numbering system that equates to an approximate value of 100,000. FAC ¶¶ 23–24. According to this numbering system, a "lakh unity of currency" is roughly "one hundred thousand units of currency." Id. Therefore, plaintiffs allege that a "lakh" in project costs was meant to represent one hundred thousand dollars. Id. at ¶ 25.

[5] Plaintiff Hardeep Singh alleges he worked for defendant in September and November 2016, FAC ¶ 7, but he only provides the hours that he worked for defendant during the month of August 2016. Id. ¶¶ 58–60.

his total pay for each week, or any deductions made from his wages. Id. ¶ 64.  For the entirety of his employment, Hardeep was "not paid overtime pay for overtime work." Id. ¶¶ 63, 64. He was also not paid a spread of hours premium for shifts lasting longer than ten hours. Id. ¶ 66.

Defendant hired Plaintiff Baldev in the spring of 2013 as a painter and construction worker. Id. ¶¶ 67–73. Baldev allegedly worked for defendant at various projects in Queens and Brooklyn, New York on the following dates: April 15, 2013 to May 23, 2013; September 6, 2013 to December 28, 2013; June 6, 2014 to July 4, 2014; June 30, 2015 to July 2, 2015; September 9-11, 2016; and March 12, 2017 to April 6, 2017. Id. ¶¶ 9, 67–73. From April 15, 2013 through September 11, 2016, defendant agreed to pay plaintiff Baldev at a rate of $200 per day. Id. ¶ 82. For the final project in 2017, defendant promised to increase plaintiff's pay to $250 per day. Id. ¶¶ 81, 83. In 2013, plaintiff regularly worked seven days per week, from 6:30 a.m. to 7:30 p.m. with a twenty-minute break each day. Id. ¶¶ 76-77. In 2014, he worked five days per week from 7:00 a.m. to 7:30 p.m. with a twenty-minute break each day. Id. ¶ 78. He worked three days in 2015 and another three days in 2016, from 7:00 a.m. to 7:00 p.m., with a twenty-minute break each day. Id. ¶¶ 79–80. In 2017, he maintained the same start and end time each day and worked three days per week. Id. ¶ 81. Defendant failed to pay plaintiff Baldev at all for the work he completed. Id. ¶ 84. Defendant also failed to provide documents regarding the hours that plaintiff worked each week, his hourly rate, his total pay for each week, or any deductions made from his wages. Id. ¶ 86.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on August 14, 2019 and named the following individuals and business entities as defendants: Golam Mowla Construction, Corp., Mozammel

Hoque, Golam Mowla, Mowla Construction, Corp. ECF No. 1. All of the defendants named in the initial complaint were served allegedly on October 30, 2019. ECF Nos. 9–12.

On January 21, 2020, defendants answered plaintiffs' complaint and asserted fourteen affirmative defenses, including that they did not know plaintiffs, had never employed plaintiffs, and had no record of employing plaintiffs for any work, and requested that all claims against them be dismissed with prejudice. ECF No. 14. The Court held an initial conference on February 12, 2020 and ordered the parties to resolve the confusion over whether the plaintiffs had named the correct defendants through informal discovery. ECF No. 19. The parties determined thereafter that despite having the same name, the answering defendants were not plaintiffs' employer, ECF No. 20, and filed a stipulation of voluntary dismissal without prejudice as to all defendants. ECF No. 27. The parties further stipulated (1) that the 'correct' defendant Golam Mowla, not the answering Golam Mowla, was personally served at 101-47 132nd St., Queens, NY 11419 on October 30, 2019, and (2) that the answering Golam Mowla would withdraw his answer to allow plaintiffs to move for a default judgment or seek other remedies against the 'correct' defendant Golam Mowla. Id.; see also ECF Order dated May 4, 2020 (adopting proposed stipulation of dismissal).

On July 17, 2020, plaintiffs informed the Court that they had "made diligent efforts" to serve defendant Golam Mowla, and that he had been personally served at his home on October 30, 2019.[6] ECF No. 29. Plaintiffs thereafter requested a Certificate of Default on July 25, 2020. ECF No. 30. The Clerk of Court noted entry of default, ECF No. 31, and plaintiffs moved for a default judgment on September 2, 2020. ECF No. 33. On September 4, 2020, the Court ordered defendant Golam Mowla to respond to plaintiffs' motion for default by September 18, 2020 and

---

[6] Plaintiffs erroneously wrote October 20, 2019 as the date of service in their status report. See ECF No. 9 (noting date of service as October 30, 2019).

directed plaintiffs to serve a copy of the order on defendant at his last known address. ECF No. 39; see Aff. of Service dated September 9, 2020, ECF No. 40.

On December 21, 2020, the Court ordered plaintiffs to supplement their motion for a default judgment to correct flaws in their calculations of damages and pay rates, and to explain why they repeatedly agreed to return to work for defendant despite their claims that defendant had not paid them at all for their previous work. ECF No. 41 at 2–4. Plaintiffs filed a supplemental Memorandum of Law and supporting papers on January 21, 2021, ECF Nos. 42–43.

On July 12, 2021, the Court scheduled an inquest on plaintiffs' motion for a default judgment in part to establish whether plaintiffs had served the correct Golam Mowla who had employed them. See ECF Order dated July 12, 2021. At the inquest, with the assistance of an interpreter, plaintiffs Hardeep and Baldev testified, and the Court held that the complaint and testimony failed to establish a basis to grant plaintiffs' motion for a default judgment. See Minute Entry & Order dated August 10, 2021. Specifically, the Court held that the plaintiffs had not sufficiently pled the elements to support coverage under the FLSA. Id. On August 11, 2021, plaintiffs withdrew their motion and requested leave to file an amended complaint to meet their burden of proof that defendant generated $500,000 or more in gross revenue each year during the relevant period. ECF No. 51. The Court granted leave and directed plaintiffs to file an amended complaint by August 25, 2021 and to file proof of service on defendant by September 24, 2021. See ECF Order dated August 12, 2021.

Plaintiffs filed their amended complaint on August 25, 2021, ECF No. 52, and an affidavit of service attesting that the summons and amended complaint had been personally served on defendant Golam Mowla d/b/a G. Mowla Master Craftsman. ECF No. 55. When

defendant failed to respond, plaintiffs again requested a Certificate of Default. ECF No. 56. The

Clerk of Court noted the defendant's default, ECF No. 57, and plaintiffs filed the instant motion

seeking a default judgment. ECF No. 59. In support of their motion, plaintiffs proffer their

counsel's declaration (Troy Decl., ECF No. 60), a proposed judgment (ECF No. 60-3), a

damages calculation spreadsheet (ECF No. 60-4), the inquest hearing transcript (ECF No. 60-5),

plaintiff Hardeep Singh's written work records (ECF No. 60-6), a breakdown of attorney's fees

and costs (ECF No. 60-7), plaintiffs' affidavit of accounting (ECF No. 60-8), and a

Memorandum of Law ("Mem. Law") (ECF No. 61). Plaintiffs also move for an award of

attorney's fees and costs. ECF No. 62. In support of their motion, plaintiffs file their counsel's

declaration in support of a fee award (ECF No. 63), records regarding attorney's fees and costs

(ECF No. 63-1), and a Memorandum of Law in support of fees and costs (ECF No. 64).

## DISCUSSION

### I. Personal Jurisdiction and Service of Process

Before a court enters a default judgment, it must address whether the defendant has been

properly served with process and whether the court can exercise personal jurisdiction over the

defendant. See Sheldon v. Plot Commerce, No. 15-CV-5885, 2016 WL 5107072, at *6

(E.D.N.Y. Aug. 26, 2016) Report and Recommendation adopted by 2016 WL 5107058

(E.D.N.Y. Sept. 19, 2016); see also Johannes Baumgartner Wirtschafts-Und Vermögensberatung

GmbH v. Salzman, 969 F. Supp. 2d 278, 287 n.6 (E.D.N.Y. 2013) ("Default judgments are

disfavored, so before a district court will enter one, it must ensure that the defaulting defendants

received notice of the claims against them and were provided an opportunity to answer those

allegations." (citing State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158,

168 (2d Cir. 2004))). It is the plaintiff's burden to establish that service was properly effected.

See Miranda v. Astoria Provisions, LLC, No. 19-CV-2923, 2020 WL 6370058, at *3 (E.D.N.Y. July 24, 2020), Report and Recommendation adopted by 2020 WL 5810160 (E.D.N.Y. Sept. 30, 2020).

Rule 4 of the FRCP prescribes the methods of service authorized by state law. See Fed. R. Civ. P. 4(e)(1). Section 308 of New York's Civil Practice Law and Rules ("CPLR") governs service on individuals: service may be accomplished either "by delivering the summons within the state to the person to be served" or "by delivering the summons within the state to a person of suitable age and discretion at the [defendant's] actual place of business" and mailing a copy of the summons and complaint to the defendant at his or her actual place of business. N.Y. C.P.L.R. § 308(2). The CPLR defines a person's "actual place of business" as "any location that [the defendant], through regular solicitation or advertisement, has held out as [his] place of business." N.Y. C.P.L.R. § 308(6). "Whether service has been made at one's 'actual place of business' is a fact-and circumstance-specific inquiry." Espinoza v. La Oficina Bar Corp., No. 20-CV-1237, 2022 WL 987429, at *6 (E.D.N.Y. Mar. 1, 2022), Report and Recommendation adopted as modified, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022) (brackets, citation and quotation marks omitted).

Here, plaintiffs' affidavit of service states that on September 10, 2021, a copy of the amended summons and complaint was served in person on defendant "Golam Mowla d/b/a G. Mowla Master Craftsman" at 101-47 132nd Street, South Richmond Hill, New York, 11419. ECF No. 55. The process server asked defendant if he was "the person named in the summons and [d]efendant admitted being the person so named." Id. The affidavit complies with the CPLR as to service of natural persons and constitutes "a prima facie case of proper service." Crawford v. Nails on 7th By Jenny Inc., No. 18-CV-9849, 2020 WL 564059, at *3 (S.D.N.Y. Feb. 5, 2020)

(citing <u>Old Republic Ins. Co. v. Pacific Financial Services of America, Inc.</u>, 301 F.3d 54, 57 (2d Cir. 2002)).

While the defendant named by plaintiffs in the amended complaint and on the summons—"Golam Mowla d/b/a G Mowla Master Craftsman"—confusingly conflates Golam Mowla the individual with the business entity that he purportedly owns and operates, defendant is described in the return of service as an "individual" of "40-55 years of age" with "black hair."[7] ECF No. 55. Plaintiffs also allege that defendant is a "male" with "black and gray hair, and brown skin[,]" and that he introduced himself to Plaintiff Hardeep Singh as "Golam Mowla" and "said that G Mowla Master Craftsman was his company." FAC ¶¶ 13–14, 18. The Court assumes therefore that plaintiffs named and served Golam Mowla as the individual defendant in this action, not as an officer or agent of his alleged company. <u>See</u> Fed. R. Civ. P. 4(h)(1) (requirements for methods of service on a corporation). As such, plaintiffs have met their burden to demonstrate service on the individual defendant.

## II. Legal Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. <u>Priestly v. Headminder, Inc.</u>, 647 F.3d 497, 504 (2d Cir. 2011). First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the

---

[7] Plaintiffs also include as Exhibit 1 to the amended complaint a "true copy of the screenshot of" defendant's alleged "Viber profile," which appears to also be a photo of defendant's face. ECF No. 52-1; <u>see also</u> FAC ¶ 75. Plaintiff Baldev alleges that he regularly communicated with defendant through "the Viber application [which] allows for calls and messaging." FAC ¶ 74. However, plaintiffs do not state whether this photo was provided to the process server or otherwise used to effect service on the correct defendant.

Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). Upon the completion of these two steps, the Court must determine if the plaintiff's well-pleaded complaint establishes a legitimate cause of action. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 n.17 (2d Cir. 2015).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993) (citing Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir. 1983)); Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). Even though the pleadings are deemed admitted, the Court still has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). Though the court must draw all reasonable inferences from the facts in plaintiff's favor to determine the defendant's liability, see Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009), it "need not credit the plaintiff['s] legal conclusions." Priestly, 647 F.3d at 504.

In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. Id. (citation omitted); see also Rolls-Royce

PLC, 688 F. Supp. 2d at 153. If the unchallenged facts establish defendants' liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). It is not so restricted in determining damages, which the Court may calculate based on documentary evidence, affidavits, or testimony at a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## III. Liability

### A. Requirements for Protection Under FLSA

To obtain protections under the FLSA, plaintiffs must demonstrate that defendant was their employer and that they were his employees. See 29 U.S.C. §§ 206–207; Arnoldo Lopez Vazquez v. Lahori Kebab & Grill Corp., No. 18-CV-2117, 2019 WL 4396724, at *3-4 (E.D.N.Y. Aug. 13, 2019), Report and Recommendation adopted by 2019 WL 4620922 (E.D.N.Y. Sept. 5, 2019). An employer's liability under the FLSA may be based on "enterprise or individual coverage." Romero v. Floris Constr., Inc., No. 16-CV-4282, 2017 WL 5592681, at *4 (E.D.N.Y. Nov. 20, 2017). Individual coverage refers to "employees…who are personally engaged in interstate commerce or in the production of goods for interstate commerce[,]" and enterprise coverage involves employees "employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." Id. (internal quotation marks omitted) (quoting Gomez v. El Rancho de Andres Carne de Tres, Inc., No. 12-CV-1264, 2014 WL 1310296, at *3 (E.D.N.Y. Mar. 11, 2014)). In the context of the FLSA, the term commerce means interstate commerce. 29 U.S.C. § 203(b).

### 1. Enterprise Coverage

To assert a claim through enterprise liability under the FLSA, a plaintiff must demonstrate that they are an "employee," as defined by the FLSA, of "an enterprise engaged in commerce."

Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 31–32 (E.D.N.Y. 2015) (citing 29 U.S.C. §§ 206(a), 207(a)); see also Padilla v. Manlapaz, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). This type of coverage is known as "enterprise coverage" and is separate from "individual coverage," an alternate route for invoking FLSA's protections. Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009). The FLSA defines an employee as "any individual employed by an employer." Fermin, 93 F. Supp. 3d at 32 (citing 29 U.S.C. § 203(e)(1)). The statute exempts certain employees from coverage. See 29 U.S.C. § 213. However, these exemptions do not extend to persons employed in jobs like plaintiffs, as painters or construction workers. See, e.g., Flo v. Campos Grp., Inc., No. 20-CV-2506, 2021 WL 7906543, at *7 (E.D.N.Y. Sept. 10, 2021), Report and Recommendation adopted by Electronic Order (E.D.N.Y. Sept. 30, 2021) (finding laborers and carpenters are not exempt from FLSA coverage).

Under the FLSA, a business is an "enterprise engaged in commerce or in the production of goods for commerce" when it (1) has employees who produce or work on goods that have moved in commerce, and (2) has gross annual sales of $500,000 or more. 29 U.S.C. § 203(s). Implicit in the definition of 'enterprise' is the requirement that a business have two or more employees engaged in interstate commerce. Jacobs v. New York Foundling Hosp., 577 F.3d 93, 99 n.7 (2d Cir. 2009) (The requirement "is met by showing that two or more employees have 'handl[ed] ... materials that have been moved in ... commerce[.]'" (quoting 29 U.S.C. § 201(s)(1)(A))); see also Gordon v. Gen. Prop. Mgmt. Assocs., Inc., 496 F. Supp. 3d 830, 837 (S.D.N.Y. 2020) (finding that defendant was not an enterprise under the FLSA in part because plaintiff was defendant's only employee). A business "that has as its only regular employee[s] the owner thereof or the parent, spouse, child, or other member of the immediate family of such owner shall

not be considered to be an enterprise" under the FLSA, regardless of the business's annual volume of gross sales. 29 U.S.C. § 203(s)(2).

Given that the only defendant in this case is an individual and not the business he allegedly owns and operates, it is unclear whether plaintiffs are even trying to allege enterprise coverage here. Even assuming they are, plaintiffs have given little information about the nature of defendant's business other than that defendant takes on six or seven construction projects a year in the New York City area and uses "high-quality" materials for his jobs. FAC ¶¶ 7, 9, 28–29; see Dixon v. Int'l Unified Workforce, Inc., No. 18-CV-7191, 2020 WL 6140054, at *3 (E.D.N.Y. Sept. 1, 2020), Report and Recommendation adopted by Electronic Order (E.D.N.Y. Oct. 19, 2020) (denying enterprise liability where complaint's allegations regarding defendant's business or nature of work is insufficient). Apart from casual references to defendant's "workers," FAC ¶¶ 21–23, plaintiffs fail to allege the number of employees defendant employed or if at all relevant times there were two or more employees "engaged in commerce or the production of commerce." 29 U.S.C. § 203(s). Plaintiffs worked for defendant intermittently and did not consistently work for him during the same time period. See FAC ¶¶ 7, 9. They allege that defendant "would personally drive" them to work in his "[w]hite minivan" but the complaint fails to allege whether defendant was also an employee or regularly worked by himself as a one-person enterprise. Id. ¶ 18. If defendant and/or his immediate family members were the only 'regular' employees of the business, the business is exempt from FLSA's coverage and plaintiffs cannot establish enterprise liability under the FLSA. 29 U.S.C. § 203(s)(2).

Moreover, plaintiffs fail to allege whether they or other employees engaged in interstate commerce. They only allege that defendant "purchased and handled goods [sic] moved in interstate commerce," that "many of the materials were originally sourced from outside of New

York State," and that they accompanied defendant "from time to time" when he purchased those materials. FAC ¶ 31. They make no mention about whether they handled or worked with those goods or materials. Lin v. Quality Woods, Inc., No. 17-CV-3043, 2021 WL 4129151, at *11 (E.D.N.Y. Aug. 10, 2021), Report and Recommendation adopted by Electronic Order (E.D.N.Y. Sept. 10, 2021) ("Nowhere does Troy allege [plaintiff] had any customer contact or contact with out-of-state businesses or products. Without more, the Court cannot conclude these bare allegations establish that he was engaged in commerce." (collecting cases)); Gonzales v. Gan Israel Pre-Sch., No. 12-CV-06304, 2014 WL 1011070, at *6 (E.D.N.Y. Mar. 14, 2014) ("Because even local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have been moved or been produced in interstate commerce, the test is met if plaintiff handled supplies or equipment that originated out-of-state." (citations and quotations omitted)). Plaintiffs' "bare allegations" here are insufficient.

To satisfy FLSA's $500,000 in gross revenue requirement, plaintiff must allege more than "mere labels and conclusions" or "formulaic recitations" of the statute. Day An Zhang v. L.G. Apparel Inc., No. 09-CV-3240, 2011 WL 900183, at *2 (E.D.N.Y. Feb. 18, 2011), Report and Recommendation adopted by 2011 WL 900950 (E.D.N.Y. Mar. 15, 2011) (citation omitted) (denying motion for default for failure to establish liability). The requirement is not jurisdictional but goes to the merits of a FLSA claim. See Angel v. Harvest C-Food Inc., No. 14-CV-6035, 2015 WL 7288644, at *2 (S.D.N.Y. Nov. 16. 2015) ("any failure to prove that [an employer] earns $500,00 or more would mean that plaintiff[s have] failed to meet [their] burden of proof on their FLSA-based claims."). Simply restating the statutory definition may be sufficient to establish coverage when it is "reasonable to infer that the myriad goods necessary to operate" the enterprise and "over $500,000.00 in annual sales d[id] not exclusively come from New York

State." Fermin, 93 F. Supp. 3d at 33; see also Huerta v. Victoria Bakery, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012); but see Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 85 (E.D.N.Y. 2012) (refusing to infer interstate commerce had been established simply because a restaurant defendant's sales exceed $500,000).

While plaintiffs allege defendant's annual gross revenue with some specificity, FAC ¶¶ 26–27, the facts alleged do not establish that defendant's gross revenue is derived from interstate commerce. Plaintiffs merely allege that defendant occasionally purchased out-of-state goods and materials from Home Depot. Id. ¶ 31. Without more than conclusory allegations as to defendant's connection with interstate commerce, plaintiffs have not met their burden to establish enterprise coverage under the FLSA. See, e.g., Tenemaza v. Eagle Masonry Corp., No. 20-CV-452, 2021 WL 8317120, at *7 (E.D.N.Y. July 22, 2021) (collecting cases); Salamanca v. ABC Corp., No. 19-CV-1335, 2021 WL 3275902, at *5 (E.D.N.Y. July 15, 2021), Report and Recommendation adopted by 2021 WL 3269089 (E.D.N.Y. July 30, 2021).

## 2. Individual Coverage

Where a defendant does not qualify as an 'enterprise' under the FLSA, a plaintiff can still establish individual coverage if they can demonstrate that they are employees "engaged in commerce or the production of goods for commerce." Walker v. Interfaith Nutrition Network Inc., No. 14-CV-5419, 2015 WL 4276174, at *4 (E.D.N.Y. July 14, 2015) (citing 29 U.S.C. § 207(a)(1)). An employee is "engaged in commerce" when they "handl[e] or otherwise work[] on goods intended for shipment out of the State, directly or indirectly[,]" or "perform[] work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. §§ 779.103, 779.104. This definition encompasses employees

employed "in the channels of commerce or in activities so closely related to this commerce, as to be considered a part of it as a practical matter." 29 C.F.R. § 779.103. Individual coverage does not extend to employment that "simply affect[s] or indirectly relate[s] to interstate commerce." Li v. Zhao, 35 F. Supp. 3d 300, 308 (E.D.N.Y. 2014) (citing McLeod v. Threlkeld, 319 U.S. 491, 497 (1943)). As a basic rule, if the plaintiff "did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA." Yang Li v. Ya Yi Cheng, No. 10-CV-4664, 2012 WL 1004852, at *4 (E.D.N.Y. Mar. 23, 2012); see also Morrow v. J W Elec., Inc., No. 11-CV-1988, 2011 WL 5599051, at *3 (N.D. Tex. Nov. 16, 2011) (holding that plaintiff who performed electrical work failed to allege individual or enterprise coverage where he merely recited the statutory elements and general facts without demonstrating that he specifically handled goods or materials that traveled in commerce).

Again, while plaintiffs may have accompanied defendant "from time to time" to Home Depot, where defendant purchased materials "sourced from out of New York State" or "moved in interstate commerce[,]" they fail to allege they handled those materials in their work. FAC ¶ 31. In the absence of other facts or evidence as to plaintiffs' handling or production of goods in interstate commerce, plaintiffs fail to establish individual coverage under the FLSA.

For the foregoing reasons, the Court finds that plaintiffs' amended complaint fails to establish either enterprise or individual coverage under the FLSA. As such, the Court should deny plaintiffs' motion for a default judgment on their FLSA claims.

## B. Supplemental Jurisdiction Over NYLL Claims

Because plaintiffs' federal claims should be dismissed, it is recommended that the Court should decline to exercise supplemental jurisdiction over the pendent state-law claims and should dismiss the state law claims without prejudice. 28 U.S.C. § 1367(c)(3) ("The district courts may

decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction[.]"); Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (citing 28 U.S.C. § 1367(c)(3)) (federal court should decline to exercise jurisdiction over state-law claims where all federal-law claims are dismissed). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point towards declining to exercise jurisdiction over the remaining state law claims." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, (1988).

Generally, courts have found it appropriate to decline exercise of supplemental jurisdiction over state law claims where all FLSA claims have been dismissed. In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998) (affirming the district court's decision to decline exercising supplemental jurisdiction over state law claims after dismissing federal claims); Guanglei Jiao v. Shang Shang Qian Inc., No. 18-CV-5624, 2020 WL 6370148, at *12 (E.D.N.Y. Aug. 11, 2020), Report and Recommendation adopted by 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020); (treating denial of default motion as dismissal of FLSA claims; supplemental jurisdiction declined over NYLL claims). Therefore, it is respectfully recommended that plaintiffs' remaining state law claims should be dismissed without prejudice.[8]

---

[8] The Court notes that the NYLL's definitions of "employee" and "employer" are analogous to those under the FLSA. Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (citing N. Y. Lab. Law §§ 2, 651), with the exception that the NYLL does not require a plaintiff to show a connection with interstate commerce or any level of gross sales. Nam v. Ichiba Inc., No. 19-CV-1222, 2021 WL 878743, at *10 (E.D.N.Y. Mar. 9, 2021) (citation omitted). If plaintiffs establish an employer-employee relationship under the FLSA, they would also establish the relationship under the NYLL. See, e.g., Salamanca, 2021 WL 3275902 at *5–6; see also Li v. Leung, No. 15-CV-5262, 2016 WL 5369489, at *10 (E.D.N.Y. June 10, 2016), Report and Recommendation adopted by 2016 WL 5349770 (E.D.N.Y. Sept. 23, 2016) (recognizing courts in this Circuit have consistently interpreted the definition of "employer" under the NYLL as corresponding exactly to the definition under the FLSA).

**C. Liability for Violations of the FLSA and the NYLL**

Even if the Court were to assume that defendant is an employer within the meaning of the FLSA and plaintiffs are his employees, there are numerous, substantive deficiencies in the amended complaint that prevent a finding of liability on a number of plaintiffs' claims. When an individual defendant and a corporate entity are both found to be plaintiff's employer, "each Defendant is jointly and severally liable under FLSA and NYLL for any damages award made in Plaintiff's favor." Mahoney v. Amekk Corp., No. 14-CV-4131, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) ("[E]ach Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiff's favor." (citation omitted)); see also Li, 2016 WL 5369489, at *11 (citing Pineda, 831 F. Supp. 2d at 685) (stating that each defendant employer was jointly and severally liable for damages under the FLSA and the NYLL). Once a plaintiff has demonstrated that their employment is covered by the FLSA, they must then show that the defendant(s) failed to abide by FLSA's requirements. Arnoldo Lopez Vasquez v. Lahori Kebab & Grill Corp., No. 18-CV-2117, 2019 WL 4396724, at *5 (E.D.N.Y. Sept. 5, 2019). Even if every other deficiency were cured, the Court would still question whether plaintiffs have met that burden here.

Principally, plaintiffs have failed to adequately allege their unpaid minimum wage claims. Under the FLSA and the NYLL, employers must meet the minimum wage requirements set by the respective statutes. See 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1). Both plaintiffs here allege that defendant told them that he would pay them "all the outstanding balance plus for the work that they do" but that no payment was made. FAC ¶ 20. They also allege that defendant "had a policy and practice of refusing to pay [plaintiffs] for some or all of the hours [plaintiffs] worked." Id. ¶ 95. While plaintiff Baldev alleges that he was not paid at all for his work, Id. ¶ 84;

see Xin Long Lin v. New Fresca Tortillas, Inc., No. 18-CV-3246, 2019 WL 3716199, at *2 (E.D.N.Y. May 1, 2019), Report and Recommendation adopted by 2019 WL 3714600 (E.D.N.Y. May 28, 2019) (alleging unpaid compensation is sufficient to establish defendant's liability for unpaid wages), plaintiff Hardeep is silent as to whether he received any wages for the work he completed.[9] Hardeep alleges that his promised rate was $130 per day in 2013 and $150 per day in 2016, FAC ¶¶ 61–62, that he regularly worked from 7:00 a.m. to 7:30 p.m. each day (and "sometimes" worked as late as 9:00 p.m.), and that he usually worked six or seven days per week. Id. ¶¶ 42–43, 45–59. Assuming these facts as true, Hardeep's hourly rate would have been above[10] FLSA's minimum wage rate, see 29 U.S.C. § 206(a)(1) ($7.25 per hour minimum wage rate effective July 24, 2009), as well as above NYLL's minimum wage rate throughout his employment. See N.Y. Lab. Law § 652 (setting the minimum wage rate as follows: $8.00 after 12/31/2013; $8.75 after 12/31/2014; $9.00 after 12/31/2015). Without further allegations, there is no basis for Hardeep's FLSA and NYLL minimum wage claims.

Because of substantive deficiencies in the amended complaint, the Court does not analyze whether defendant is liable for the remainder of plaintiffs' FLSA and NYLL claims. Rather, the Court recommends that plaintiffs' motion for a default judgment should be dismissed and that

---

[9] The Court notes that plaintiff Hardeep testified that defendant did not pay him for any of his work at the inquest hearing on August 10, 2021. Inquest Hearing Transcript (hereinafter "8/10/21 Tr."), ECF No. 60-5, 8/10/21 Tr. 25:1, 27:4–8. However, these allegations by Hardeep are neither in the amended complaint nor attached as exhibits to the amended complaint, and thus cannot be the basis for establishing liability on a default judgment motion. Rolls-Royce PLC, 688 F. Supp. 2d at 153–155.

[10] The FLSA and the NYLL use a similar formula for calculating an employee's hourly rate where the employee was paid a flat sum for a day's work. See 29 C.F.R. § 778.112; N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R."), § 142-2.16. Under the FLSA and the NYLL, the regular hourly rate is determined by "totaling all the sums received at such day rates ... in the workweek and dividing by the total hours actually worked." Chen v. JP Standard Constr. Corp., No. 14-CV-1086, 2016 WL 2909966, at *9 (E.D.N.Y. Mar. 18, 2016), Report and Recommendation adopted by 2016 WL 2758272 (E.D.N.Y. May 12, 2016) (quotations and citation omitted). Following this formula, plaintiff Hardeep's regular hourly rate would have been between $10.00 per hour and $12.50 per hour throughout his employment.

plaintiffs be granted thirty days leave to amend their complaint for a second time in a manner consistent with this Report & Recommendation.

## IV. Damages

Even if plaintiffs were to establish liability as to all of their FLSA and NYLL claims, they have not proffered sufficient evidence to prove their damages for any sum certain. It is well established that a default is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). "To determine damages in a motion for default judgment, courts do not accept the plaintiff's allegations at face value." Nationstar Mortg. LLC v. Kadlec, No. 20-CV-363, 2021 WL 7906568, at *4 (E.D.N.Y. Jan. 11, 2021) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111); see also Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Gunawan, 897 F. Supp. 2d at 83 (E.D.N.Y. 2012) (citations omitted). "There must be an evidentiary basis for the damages sought by plaintiff," although the Court may base its determination on "evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Fed. R. Civ. P. 55(b)(2); Fustok v. Conticommodity Services, Inc, 873 F.2d 38, 40 (2d. Cir. 1989)).

In their proposed judgment, ECF No. 60-3, plaintiffs request the following damages:[11]

---

[11] Calculations for these damages are attached to plaintiffs' motion, ECF No. 60-4. To "facilitate the Court's understanding of the damages," plaintiffs' counsel also provides an affidavit of accounting. ECF No. 60-8.

| Plaintiff | Compensatory Damages | Liquidated Damages | Statutory Damages for Wage Notice and Wage Statement |
|---|---|---|---|
| Hardeep Singh | $36,415.28[12] | $36,415.28 | $5,000 |
| Baldev Singh | $52,470.85 | $52,470.85 | $10,000 |

In support of their damages, plaintiffs submit the following: their counsel's declaration in support of default (Troy Decl., ECF No. 60), a proposed judgment (ECF No. 60-3), a damages calculations sheet (ECF No. 60-4), the inquest hearing transcript from August 10, 2021 (ECF No. 60-5), plaintiff Hardeep Singh's written work records (ECF No. 60-6), a breakdown of attorney's fees and costs (ECF No. 60-7), plaintiffs' affidavit of accounting (ECF No. 60-8), and a Memorandum of Law ("Mem. Law") (ECF No. 61). Plaintiffs also aver that if the supporting papers are insufficient to support an award of damages, they alternatively request that damages be determined at an inquest. See Troy Decl., ECF No. 60 ¶ 13.

The burden rests on an employee to prove that they were not appropriately compensated for the work they performed. Newman v. West Bar & Lounge, Inc., No. 20-CV-1141, 2021 WL 2401176, at *6 (E.D.N.Y. Jun. 11, 2021) (quoting Rodriguez v. Queens Convenience Deli Corp., No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)). When a defendant fails to appear and produce employment records, the Court may credit a plaintiff's assertions regarding the hours they worked and the compensation they received, even when based only on plaintiff's recollection. Hernandez Gomez v. 4 Runners, Inc., 769 Fed. Appx. 1, 2 (2d Cir. 2019) (summary order) (quoting Kuebel v, Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011)); Newman, 2021 WL 2401176, at *6–7 (quoting Rivera v. Ndola Pharm Corp., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007)); Arnoldo Lopez Vazquez, 2019 WL 4396724, at *6 (citing Perez v. Queens

---

[12] As detailed further below, see infra, Section V, there are significant errors and inconsistencies in plaintiff Hardeep's calculations for compensatory damages as reflected in the damages calculations sheet, ECF No. 60-4.

Boro Yang Cleaners, Inc., No. 14-CV-7310, 2016 WL 1359218, at *2 (E.D.N.Y. Mar. 17, 2016))
Report and Recommendation adopted by 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016). A Court
may award damages based upon a plaintiff's recollection of the hours they worked "even though
the result is only approximate." Hernandez Gomez, 769 Fed Appx. at 2 (quoting Reich v. S. New
England Telecomm. Corp., 121 F.3d 58, 66–67 (2d Cir. 1997)). A sworn declaration from
plaintiff may provide a sufficient basis for the Court to determine damages. Maldonado v. La
Nueva Rampa, Inc., No. 10-CV-8195, 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) ("An
affidavit that sets forth the number of hours worked is sufficient.").

Here, plaintiffs seek an award for back pay under the FLSA and the NYLL, including
unpaid minimum wage, overtime compensation, and spread of hours pay; liquidated damages;
damages for violations of New York's wage notice and wage statement requirements; and pre-
judgment interest. Mem. Law, ECF No. 61 at 18–25. As evidence of plaintiffs' recollections of
the hours they worked and their rate of pay, plaintiffs submit the inquest hearing transcript from
August 10, 2021. 8/10/21 Tr., ECF No. 60-5. Plaintiff Hardeep also relies on copies of
contemporaneous written records of the days that he worked each week. ECF No. 60-4.[13] The
record evidence submitted does not provide a sufficient basis for determining a damages award.
It does not even provide enough evidence to establish the number of hours that plaintiffs worked
each week. For example, while plaintiff Baldev provides an approximate year or time of year
when he worked as well as his general shift times, see 8/10/21 Tr. 42:15–44:3, it is impossible
based on plaintiff's testimony to calculate wages owed with any reasonable certainty. As for
plaintiff Hardeep, while his written work records and testimony in tandem provide some

---

[13] Counsel in the Memorandum of Law also cite to what appear to be sworn affidavits by the plaintiffs—"Hardeep
Aff." and "Baldev Aff."—for the position that defendant "did not pay Plaintiffs any wages." Mem. Law, ECF No.
61 at 7. However, these affidavits are not included in plaintiffs' motion papers.

evidence of the dates and hours that he worked, there are numerous discrepancies between the amended complaint and the instant motion for a default judgment.

Without determining plaintiffs' weekly hours of work, the Court cannot determine their hourly rate of pay. An employee who is paid a flat sum for a day's work can determine their regular rate "by totaling all the sums received at such day rates…in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112; see Chen, 2016 WL 2909966, at *9 (applying 29 C.F.R. § 778.112 to calculate the regularly hourly rate of a construction worker who was paid a flat rate per day); see also N.Y.C.C.R. § 142–2.16 (requiring a similar formula under NYLL as that under FLSA to calculate the regular hourly rate for employees who are not paid on an hourly basis).

Plaintiffs' weekly hours and hourly rate are threshold issues for determining any damages award. The papers filed in support of plaintiffs' damages are internally inconsistent and at times contradict the amended complaint. Plaintiffs fail to proffer sufficient evidence to determine damages for a sum that can be made certain by computation. Furthermore, the Court cannot accept plaintiffs' amended complaint as a substitute for record evidence to demonstrate their recollections.[14] The Court should therefore deny plaintiffs' instant motion and grant plaintiffs thirty days leave to file a second amended complaint.

## V. Motion for Attorney's Fees and Costs

The Court should also deny plaintiffs' instant motion for attorney's fees and costs. Under the FLSA and the NYLL, a successful plaintiff may recover reasonable attorney's fees and costs. 29 U.S.C. § 216(b); NYLL § 663(1). When examining the reasonableness of a requested fees award, the Court determines the "presumptively reasonable fee," or rather, the amount that a client

---

[14] Any sworn statement by plaintiffs shall include a certification that the statement was translated into plaintiffs' spoken language prior to plaintiff signing it.

would be willing to pay for the attorney's services. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. Of Elections, 522 F.3d 182, 190 (2d Cir. 2008); see also Ryeco, LLC v. Legend Produce Inc., No. 20-CV-4044, 2021 WL 2742873, at *10 (E.D.N.Y. May 24, 2021) (citing Simmons v. New York City Transit Auth, 575 F.3d 170 (2d Cir. 2009)) Report and Recommendation adopted by 2021 WL 2741605 (E.D.N.Y. July 1, 2021). The plaintiff bears the burden of demonstrating "the reasonableness and necessity of hours spent and rates charged." Jianmin Jin v. Shanghai Original, Inc., No. 16-CV-5633, 2020 WL 4783399, at *4 (E.D.N.Y. Aug. 18, 2020) (quoting Kindle v. Dejana, 308 F. Supp. 3d 698, 703 (E.D.N.Y. 2018).

Here, plaintiffs seek $51,675.50 in attorney's fees and $1,551.01 in costs. Troy Decl. in Support of Fees and Costs ("Troy Fees Decl."), ECF No. 63 ¶ 72. These amounts far exceed "what a reasonable paying client would be willing to pay" for the services so far rendered in this case. Arbor Hill, 522 F.3d at 183–84 (2d Cir. 2007). Along with the aforementioned deficiencies in plaintiffs' amended complaint and motion for a default judgment, counsel's performance in this case is also evidenced in Troy Law's calculation of damages. The damages calculations sheet filed in support of plaintiffs' motion, ECF No. 60-4, is riddled with errors and inconsistencies, including:

- For workweeks in which plaintiff Hardeep worked "overtime days," there appears to be an overcounting of the number of days worked. For example, for the week of September 27, 2013 through October 3, 2012, plaintiffs worked 7 "regular days" and 3 "overtime days," totaling 10 days of work that week.

- The number of days that plaintiffs worked in certain weeks do not reflect the number of days worked as alleged in the amended complaint. For example, for the week of

December 27, 2021 through December 31, 2021, plaintiff Hardeep claims that he worked

4 days in the calculations sheet and 5 days in the amended complaint. FAC ¶ 57.

- The calculations sheet lists certain weeks in which plaintiff Hardeep worked in September and November 2016. While Hardeep's written work records, ECF No. 60-6, make note of days and hours worked during these weeks, this information does not appear in the amended complaint.

- The calculations sheet includes unpaid spread of hours pay for weeks in which Hardeep did not work at all (see, e.g., week of September 28, 2016 through October 4, 2016).

- There are significant, unexplainable differences between the plaintiffs' statutory damages related to wage notice and statement requirements, in spite of them working for similar periods of time.

In support of a fees and costs award, Troy Law's managing partner, John Troy, declares that his firm is "one of the largest firms in case load in the nation's Fair Labor Standards Act wage-and-hour litigation" and then provides nearly five-pages' worth of CV numbers and case names for which he is the attorney of record. Troy Fees Decl. ¶ 27. Troy also states that he is the attorney of record "for at least [168] wage-and-hour-matters" in the Southern District of New York and 40 wage-and-hour matters in other federal districts. Id. ¶¶ 28–29. Troy seems to confuse quality with quantity by simply counting his firm's caseload and concluding that his services are reasonable and thus merit the fees requested. See Jianmin Jin, 2020 WL 4783399, at *6 (noting that Troy's fees should be excluded where litigation was "effectively abandoned midstream"); see also Rozell v. RossHolst, 576 F. Supp. 2d 527, 538 (S.D.N.Y.2008) (collecting cases where fees were substantially reduced for motions that were unreasonable or had little chance of success).

While the Court does not conduct a complete review of plaintiffs' motion for fees and costs at this time, a number of issues in Troy Law's billing records must be noted, ECF No. 63-1, especially in light of this case's history: (1) double billing for certain tasks, (2) billing for failed attempts to serve defendant and plaintiffs' first failed motion for a default judgement, (3) billing for work on documents that do not appear in the filings, (4) time entries that are vague or indecipherable, and (5) billing for tasks that could have been performed by an associate or clerical staff. See Callari v. Blackman Plumbing Supply, Inc., No. 11-CV-3655, 2020 WL 2771008 at *12 (E.D.N.Y. May 4, 2020), Report and Recommendation adopted by 2020 WL 2769266 (E.D.N.Y. May 28, 2020) (collecting cases where fees were reduced for excessive time spent on tasks). This is not the first time this Court has admonished Troy and his firm for excessive billing and generally deficient performance. See, e.g., Sun v. Sushi Fussion Express, Inc., No. 16-CV-4840, 2022 WL 2193441, at *2–4 (E.D.N.Y. June 17, 2022) (finding hours billed "grossly excessive" and submissions "not reflect[ive of] the attention to detail typical of most law firms' filings"); Wen v. Hair Party 24 Hours Inc., 2021 WL 3375615, at *23 (finding entries "too vague to allow for meaningful judicial scrutiny" in incorrectly performed work by counsel); Lin v. Quality Woods, 2021 WL 4129151, at *3 (detailing inconsistencies in plaintiff's submissions and multiple failures to properly serve defendant); Lin v. Joe Japanese Buffet Rest. Inc., No. 17-CV-3435, 2022 WL 2718584, at *8 (E.D.N.Y. June 7, 2022), Report and Recommendation adopted by 2022 WL 2716487 (E.D.N.Y. July 13, 2022); Jianmin Jin, 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020) ("John Troy frequently billed for tasks that should have been handled by a less-experienced lawyer or support staff"); Won v. Gel Factory, Corp., No. 20-CV-5269, 2022 WL 903121, at *9 (E.D.N.Y. Jan. 25, 2022), Report and Recommendation adopted by 2022 WL 903065 (E.D.N.Y. Mar. 28, 2022) ("As the most

experienced attorney with the highest billable rate, John Troy should not have been the one to perform the majority of the work in this matter."). Fees should not be awarded where counsel's services fall far short of what a client would reasonably expect from an attorney representing them in their case.

## CONCLUSION

It is therefore recommended that the Court should deny plaintiffs' motion for a default judgment and motion for attorney's fees and costs without prejudice. Plaintiffs should be granted thirty days to file a second amended complaint to address the deficiencies identified in this Report and Recommendation.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____
              /S/
LOIS BLOOM
United States Magistrate Judge

Dated:  September 30, 2022
        Brooklyn, New York